IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY BEASLEY,                          )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )       Case No. 3:13-cv-625-NJR-DGW
                                        )
SALVADOR GODINEZ, SANDRA FUNK,          )
MICHAEL D. PYATT, KIM SEIDAL, and       )
JOHN DOES #1 and #2,                    )
                                        )
        Defendants.                     )

REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Kim Seidel (Doc. 69) be **DENIED** and that the Court adopt the following findings of fact and conclusions of law.

INTRODUCTION

Plaintiff Larry Beasley, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 alleging defendant prison officials were deliberately indifferent to his safety and medical needs during, and immediately following, his transfer to Menard.  More specifically, Plaintiff complains that while he was being transported on a bus that

was not equipped with seatbelts, the driver, John Doe #1, was driving erratically and, as a result, Plaintiff was tossed from his seat and sustained injuries.   Plaintiff contends that correctional officers on the bus ignored his requests for medical care and, when he was seen by the medical screener at Menard, he was not provided with immediate medical care.   After the Court's initial screening of Plaintiff's complaint, he was allowed to proceed on the following counts:

Count 1:    Eighth Amendment deliberate indifference claim against IDOC Director Salvador Godinez and Sandra Funk, the transfer coordinator, for allowing Plaintiff to be transported on a bus not equipped with seatbelts;

Count 2:    Eighth Amendment deliberate indifference claim against the bus driver, John Doe #1, for driving erratically and failing to secure Plaintiff medical care for his injuries;

Count 3:    Eighth Amendment deliberate indifference claim against Michael Pyatt and John Doe #2 for failing to secure Plaintiff medical care for his injuries;

Count 4:    Eighth Amendment deliberate indifference claim against Kim Seidel, the medical screening, for failing to provide Plaintiff medical care upon his arrival at Menard.

Defendant Kim Seidel filed a motion for summary judgment on February 6, 2015 (Doc. 69) arguing Plaintiff failed to exhaust his administrative remedies prior to filing suit against her. Plaintiff filed his response to Defendant Seidel's motion on March 31, 2015 (Doc. 80), and the Court held a hearing on Defendant's motion pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), in which Plaintiff appeared by video-conference and testified as to the efforts he undertook to exhaust his claim against Defendant Seidel.

### FINDINGS OF FACT

Plaintiff's claim against Defendant Seidel relates to her alleged failure to provide treatment for the injuries Plaintiff sustained on the bus during his transfer to Menard on May 2,

2012. Specifically, Plaintiff claims that Defendant Seidel examined Plaintiff upon his arrival at Menard, but did not secure immediate attention for his injuries; rather, Plaintiff was advised to make a sick call request and made to wait four days before seeing a nurse.

Defendant Seidel's motion for summary judgment (Doc. 69) asserts that Plaintiff only filed one grievance, dated May 20, 2012, relevant to his claim, which was deficient in various respects and, as such, is not sufficient to exhaust Plaintiff's claim against her.

Plaintiff's **May 20, 2012 grievance** (Def. Ex. A, Doc. 70-1, pp. 6-8), complains of the incident on the bus transfer to Menard. Plaintiff explains that he was thrown from his seat and sustained injuries. Upon his arrival at Menard, Plaintiff recounts that he "told the nurse what happen[ed] ... [and] she told [him] to put in a sick call request." There is no response from the counselor, Grievance Officer, or Warden; however, the Administrative Review Board ("ARB") received this grievance on June 6, 2012. On January 17, 2013, the ARB returned Plaintiff's grievance without addressing it on the merits, directing Plaintiff to submit the grievance officer's and warden's response with his appeal. An additional note was included in the ARB's response, which states as follows: "As you're grieving subsequent treatment from Menard, your current facility, you are required to also provide the above [grievance officer's and warden's response] when you receive back" (Doc. 70-1, p. 6). Accordingly, Defendant avers that this grievance was not exhausted prior to Plaintiff filing suit and, also, Defendant contends this grievance was deficient as to Defendant Seidel because it does not name or sufficiently describe her.

### *Pavey Hearing*

At the hearing held on May 1, 2015, Plaintiff addressed Defendant's arguments and expounded on the arguments he articulated in his response to Defendant Seidel's motion.

Plaintiff conceded that his May 20, 2012 grievance does not exhaust his claim against Defendant Seidel.  However, Plaintiff testified that he filed a grievance on May 6, 2012, that is almost an exact copy of his May 20, 2012 grievance, which was sufficient to exhaust against Defendant Seidel.  Plaintiff contends that he submitted this grievance to his orientation counselor, Counselor Sumner, and asked Mr. Sumner to pass this grievance along to his assigned counselor. On June 27, 2012, Plaintiff asked his assigned counselor whether he received Plaintiff's grievance, to which the counselor indicated that he had forwarded it to the Health Care Unit ("HCU") for a response.  Plaintiff's counselor advised Plaintiff that he would receive a copy of the HCU's response, when it was issued; however, Plaintiff avers he never received any response to this grievance.  At the hearing, Plaintiff explained that he was able to attach a copy of his May 6, 2012 grievance to his response because prior to submitting it to his orientation counselor he handwrote a copy of this grievance, for his records.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).  The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).  *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).  A moving party is entitled to judgment as a

matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

***Exhaustion Requirements under the PLRA***

The Prison Litigation Reform Act provides:

No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires

Page **5** of **9**

proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.   In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742.  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

***Exhaustion Requirements under Illinois Law***

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  ILL. ADMIN. CODE TIT. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b).  The grievance form shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint.  *Id.* § 504.810(b).  The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance.  *Id.* § 504.830(d).  The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed, where reasonably feasible under the circumstances. *Id.* § 504.830(d).   An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).   An inmate's administrative remedies are not exhausted until the appeal is ruled on by the Administrative Review Board. *See*

*Id.* The Administrative Review Board shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id.* § 504.850(f).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840. If, after receiving a response from the CAO, an offender feels that the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id.* § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

Based on the evidence adduced and arguments made at the hearing, it is recommended that the Court find Plaintiff exhausted his administrative remedies as to Defendant Kim Seidel.

The question before the Court is whether Plaintiff's assertion that he attempted to file a grievance with his institution on May 6, 2012 is credible and, if so, whether his attempts at exhaustion were thwarted and whether the substance of this grievance is sufficient to describe Defendant Seidel, thereby exhausting Plaintiff's claim against her.

The Court finds Plaintiff's assertions regarding his May 6, 2012 grievance credible. A review of the docket in this matter reveals that in his Complaint, filed June 27, 2013, months prior to Defendant's filing of her motion for summary judgment, Plaintiff explained that he "first attempt[ed] [to] solve his problem … by filing a grievance dated May 6, 2012 and his second attempt was dated May 20, 2012" (Plaintiff's Complaint, Doc. 1, p. 3). Further, in Plaintiff's grievance dated May 20, 2012, submitted to the Court by Defendant Seidel, Plaintiff writes "[t]his is my second grievance about this matter I have not gotten a respon[se] from the first one" (Def. Ex. A, Doc. 70-1, p. 8). These statements, written by Plaintiff *before* Defendant filed her motion, corroborate his assertions regarding the May 6, 2012 grievance. Accordingly, after having the opportunity to observe Plaintiff during the hearing and reviewing the corroborating evidence, the Court finds that Plaintiff filed a grievance on May 6, 2012 that was, in substance, the same as his May 20, 2012 grievance. Further, based on Plaintiff's testimony, the Court finds that Plaintiff was thwarted by his counselor in his attempts to exhaust this grievance.

Finally, the complaints lodged in Plaintiff's May 6, 2012 grievance are sufficient to describe Defendant Seidel. Specifically, Plaintiff writes that he is complaining about an incident

that happened while he was on the transfer bus from Logan Correctional Center to Menard. Then, Plaintiff explains that he was injured and "after being strip[p]ed search[ed] [he] told one of the nurses what had happen[ed] and that [he] had a bad headach[e] and … she told [him] to put in a sick call pass" (Doc. 80, pp. 13-14).  Although the Court acknowledges this may not be the most detailed description of Defendant Seidel, it is sufficient to comply with ILCS § 504.810, and, importantly, was sufficient to put the prison on notice that Plaintiff was complaining about the nurse who performed his screening upon his transfer to Menard, an individual whose identity could be readily ascertained by prison officials.  Accordingly, the Court finds that Plaintiff exhausted his administrative remedies as to Defendant Seidel prior to filing suit.

### RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Kim Seidel (Doc. 69) be **DENIED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 16, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**